the original PlayStation 1. Do not in any way transmute the one-year express limited warranty that came in the box and was posted on the website of SCEA.  Sotomayor, once the affirmation becomes a basis of the bargain, that the product would work as represented, do the plaintiffs at that point need to demonstrate any particular time period? Or can they say, look, there was an affirmative representation that the functionality of the PS3 includes the ability to download other operating software. And so during the time that the PS3 is operational, 10-year period or what have you, during the lifetime of that product, I expect to be able to download other software, because that's the affirmation that was advertised. Your Honor, that affirmation stands at the moment that it is made. It is part of statements as to what features the product will have at the time of sale. The reason that, for instance, the Magnuson-Moss Warranty Act, the reason that the Song-Beverly Consumer Warranty Act and general warranty law requires that there be a temporal aspect to a warranty is so that both the consumer and the manufacturer have the same set of expectations about how long the features that are available at the time of sale will continue to exist. Otherwise, as the Court in Wilson and the California Court of Appeal in Dougherty note, in effect, a manufacturer would become a guarantor of perpetual continued functionality. Kagan. So on your theory, then, given the language that the reservation in the license and other statements that you rely on to basically reserve the right for Sony to update, and that could affect functionality, so on that theory, Sony could advertise this as having functionality that's akin to a minicomputer, and then the very next day take the ability to download operating software away? No, Your Honor. SCEA has never represented or made that argument in this case. So after so it's not okay to take it away after a day or a week, but it is okay to take it away after one year, once the terms of the express warranty expires? Your Honor, as long as it is done in a manner that is not inconsistent with other State law, for instance, we couldn't break into someone's house with a sledgehammer and smash their PS-3 to pieces. As long as it's not done in a manner that's inconsistent with Federal law, for instance, one of the claims that is at issue in this case, the CFAA, so long as we did not make an impermissible, unauthorized intrusion into that computer, yes, Sony does have the contractual right. And we have to remember, Your Honor, that's because there's an overlay here. We're selling not just a hardware product, but we are also offering a revocable, conditional license to use software and to use the PlayStation Network. And there is no way that we can break into someone's house with a sledgehammer and smash their PS-3 to pieces. All right. Well, I might be persuaded by the argument with regard to the warranty claims, but does that argument apply equally to the other remaining claims as well? In other words, do the plaintiffs still have, and I'm not saying it will be a winning claim, but the right to at least argue to the jury that given the way Sony advertised the functionality of the PS-3, having the ability to access the online gaming world and expecting that, yes, periodically that gaming world will be updated, and maybe you'll lose some points that you've amassed or lose some characters that you've created, and I think that's reasonable to expect that you'll lose that if Sony updates that gaming world, but that you'd lose the ability to use it as a mini computer altogether, at least have the ability to argue before the jury that that's they're entitled to damage just because of it? Your Honor, with regard to the UCL claims, first of all, those are not jury claims. Those are only heard to the court. But regardless of who the trier of fact is, case law in California makes clear that the intent of the UCL is not to allow parties to rewrite the terms of a contract. In cases involving, for instance, the mortgage industry, in Countrywide, a very similar argument was made that when a title, a deed of title was presented, it was not to allow The deed of title allowed the mortgagor to collect other expenses related to the mortgage. It did not expressly tell the mortgagee that, for instance, the mortgagor could assign the cost of an inspection to the mortgagee. The mortgagee said that was an inadequate disclosure. You didn't tell me that you were reserving the right to impose that on me. And in the face of a UCL claim alleging that that disclosure should have been made expressly to ensure that the expectations of the mortgagee were consistent with those of the mortgagor, the court of appeals said, no, we are not going to rewrite contracts. Kagan. What about the CLRA and the FAL claims? Kennedy. But go ahead. She asked you. Now, I was going to focus on the UCL fraud claim because it, frankly, to me, the threshold for the UCL fraud claim pleading is very low. And therefore, what we have here, it seems to me, is a lot like Day versus AT&T. Sony comes out with their misrepresentations, I guess, but I'm not sure they're even fraudulent, but they might be misleading. And I think that's all they've got to be for a UCLA claim. And notably here, the customers faced a similar situation in my book to AT&T because the public advertisements advertise the other OS while only legal disclaimers, which the customers may not even read, mention the possibility of losing the functionality. Therefore, I'm having a tough time how I can dismiss this claim without further thought through it by the court. Your Honor, the UCL, just like the CLRA and just like warranty law, all turns on reasonable expectations. And here the question is, does any purchaser of the PSA, PS3, reasonably expect that all of the functions of the PSA are going to continue for whatever reason after the first year? Well, but we're only one year long here. That seems to be the question at point. Sony comes in with the idea that they can limit these warranties to one year as expressed and implied. But I'm having a tough time with the UCLA flawed-printing standard being so low as to determine that the customers would have absolutely understood that these legal disclaimers would happen within a year. Your Honor, none of the software system license agreement functionality restrictions occurred within a year. I may be misunderstanding. Okay. So, and in fact, that we know that specifically from the facts relevant to these foreign-aimed plaintiffs. They each purchased in either late 2006 or early 2007. They continued to use their PS3s. Then, in March of 2010, they were offered a choice. And I think the fact of the presence of that choice is critical to the application of the UCL, which when we think about it, again, the UCL is not supposed to rewrite contracts. It's supposed to address sharp or deceptive practices. Inherently, the notion that Sony, in response to what the plaintiffs conceded in their complaint, was a hacking attempt, an attempt to interfere with Sony's intellectual property rights, made a security patch, a software patch. But in doing so, it didn't even impose that security patch on all of the PlayStation 3 purchasers. It gave them a choice. They had the choice of downloading 3.21, in which event they would no longer be able to access that portion of their hard drive, notably a hardware issue that would have been governed solely by the one-year hardware warranty. So they had that choice. They could no longer use the other OS feature only. Or they could download 3.21, and in that instance, they would be able to continue to access the PlayStation network. They would be able to continue to play PlayStation software. And we have to go back to a point that I think that the district court judge made very eloquently. Judge Seaborg said, how can any consumer, at the time they purchased the PS3, expect to have perpetual access to the PlayStation network, a gratuitous website that provides chatroom and gaming opportunities? Since you have no expectation of perpetual access to the PlayStation network, how can a step that's taken by Sony that precludes you from having that, or conditions, which is all really what occurred here? Is that a question of fact or a question of law, whether consumers reasonably can expect continual access to the online gaming world? Under the Dougherty case, the court made clear that the only reasonable expectation that a consumer can have is that a product that it purchases will function for the continued persistence of the warranty. If the product functions that way, then all reasonable expectations have been fulfilled. So under — and Dougherty was a demer case, the equivalent of a motion-to-dismiss case. So, no, Your Honor, I would disagree on that issue. I think that the courts very correctly identified the absence of an express misrepresentation here. When you look at the cobbled-together patchwork of different statements by different people at different times, many of which had nothing to do with the point of sale, I'm reminded of basically a ransom note that someone creates by cutting out pieces of different magazines and putting them all together. But that is certainly not the essence of an actionable misrepresentation. At the end of the day, all of these purchasers received exactly what Sony promised them they would get, and that was a fully functioning PlayStation 3 for the period of one year. Thank you very much. Roberts. Thank you, counsel, for your argument. Rebuttal. Mr. Averro. Averro. Thank you. I want to make sure that we're — we distinguish the Wilson v. Hewlett-Packard case, because that case that Sony relies on really was a case involving an attempt by consumers after the warranty period had expired to shift back to the manufacturer the cost for repairs. And that's not what we're trying to do here. What we're saying here is we bought and paid for, and actually paid extra, $100 extra, because that's how much more the PlayStation 3 cost than a comparable Xbox, for these additional features. And now Sony, post-warranty and post-sale, without disclosing that it could do this at the time of sale, took away features or functions. And consumers, under the Consumer Legal Remedies Act and other consumer protection laws, really need to be and deserve to be compensated for that. We believe that it wasn't proper on a motion to dismiss for the judge below to make determinations about what a reasonable consumer would or would not think, that  Sony's position really is that consumers were buying what they could later turn into a $600 brick, that they could take away any sort of features and functions that they wanted to. Consumers certainly didn't expect that. This case, if you accept Sony's position, goes beyond just the consumers who bought the PS3. Because if you adopt their position, there's nothing to stop a business-to-business relationship doing the same thing. Oracle sells a large piece of software or licenses it, and then promises, I'm going to issue updates and upgrades, and then decides later, well, this is getting too expensive. I'm just going to send an update or upgrade that deletes the human resource function out of that software so I don't have to pay to continue to update it. And unfortunately for Sony, I think that that simply cannot be the law. And for consumers in this case, it certainly isn't the law. Thank you, Your Honor. Roberts. Okay. Thank you both very much. A very interesting case, which we'll try our best to unscramble. It's argued and submitted. And that concludes the calendar for this sitting of the Court. Thank you.
judges: Hawkins, Smith, Nguyen